IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**STASIA SCARVER**                                                                                **PLAINTIFF**
**ADC #714033**

v.                                    No: 3:23-cv-00176-JM-PSH

**LEVI McDOUGAL**                                                                                 **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Stasia Scarver filed a *pro se* complaint on August 24, 2023, while incarcerated at the Arkansas Division of Correction's McPherson Unit (Doc. No. 2). The Court granted Scarver *in forma pauperis* status and instructed her to file an amended complaint to clarify her claims (Doc. No. 7). She subsequently filed an

amended complaint (Doc. No. 10) and a declaration (Doc. No. 11). The undersigned recommended that her claims be dismissed for failure to state a claim upon which relief may granted, and Scarver filed objections making new allegations regarding the knowledge and personal participation of Defendant Levi McDougal. *See* Doc. No. 12, 15. Scarver's objections were construed as a supplement to her complaint, and her failure-to-protect claim against McDougal was allowed to proceed. *See* Doc. No. 16. Her other claims were dismissed. *Id.*

Before the Court is a motion for default judgment against McDougal filed by Scarver. Doc. No. 25. On August 5, 2025, the Court held an in-person hearing, during which Scarver clarified her complaint allegations and provided testimony in support of her claim for money damages. For the reasons described herein, the undersigned recommends denying Scarver's motion for default judgment.

## II. Legal Standard

Federal Rule of Civil Procedure 55 contemplates a two-step process for the entry of default judgments. First, pursuant to Rule 55(a), the party seeking a default judgment must have the Clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend. Second, pursuant to Rule 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule. *See Dahl v. Kanawha Inv. Holding Co.,* 161 F.R.D. 673, 683 (N.D. Iowa 1995). Under Rule 55(b)(1), the clerk can enter default

judgment if a "plaintiff's claim is for a sum certain or a sum that can be made certain by computation," like an amount clearly due under a contract. If the claim is not for a definite amount, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

Once default is entered, "default judgment may be entered against a party who has defaulted 'for not appearing.'" Fed. R. Civ. P. 55(b). The Eighth Circuit "has not articulated specific factors that must be considered in determining whether a Rule 55(b) motion for default judgment for failure to defend should be granted." *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 857 (8th Cir. 1996). Facts alleged in the complaint other than those relating to the amount of damages are deemed admitted and may not be later contested. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010); 10A Charles Alan Wright et al., Federal Practice and Procedure at § 2688.

However, before entering a default judgment, a court must "ensure that 'the unchallenged facts constitute a legitimate cause of action.'" *Richardson v. Duncan*, 117 F.4th 1025, 1029 (8th Cir. 2024) (quoting *Marshall v. Baggett, supra*); *see also Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (internal quotations omitted). The Court may hold any hearings necessary to establish the truth of any allegation by evidence or investigate any other matter, while preserving the right to a jury trial. Fed. R. Civ. P. 55(b)(2). *See also Richardson v. Duncan, supra* (explaining that a

hearing held pursuant to Rule 55(b) should not be used to raise new allegations, thus effectively amending plaintiff's complaint).

### III. Discussion & Analysis

A.  *Official Capacity Claims*

Scarver sues McDougal in his official and individual capacities. *See* Doc. No. 10 at 2. A suit against a defendant in his official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, Scarver is not entitled to a default judgment against McDougal in his official capacity.

B.  *Individual Capacity Claims*

   1.   Service on McDougal

Before default judgment may be awarded, the Court must determine if McDougal was properly served and failed to answer or otherwise defend this case.

Rule 4(e) of the Federal Rules of Civil Procedure states that service within a judicial district of the United States may be effected pursuant to the law of the state in which the district court is located. Arkansas Civil Procedure Rule 4(f)(1)[1] allows

---

[1] This version of Rule 4 became effective June 1, 2022. *See* CREDITS, Ark. R. Civ. P. 4.

service to be effected by certified mail "addressed to the person to be served with a return receipt requested and delivery restricted to the addressee or the agent of the addressee." Ark. R. Civ. P. 4(f)(1).

On December 4, 2023, United States District Judge James M. Moody, Jr. issued an order directing the Clerk to prepare a summons for McDougal and the United States Marshal to serve on him the summons and complaint. Doc. No. 16. On February 27, 2024, a summons was returned executed for Defendant Levi McDougal, indicating that he had been served on February 16, 2024, at an address filed under seal. *See* Doc. No. 19. McDougal was served by certified mail return receipt at his last known address; the green card (which was filed under seal) appears to be signed by McDougal. He did not file an answer to the amended complaint or other responsive pleading and the time for doing so has expired.

On April 22, 2024, the Court entered an Order directing McDougal to show cause why the Clerk should not enter default against him pursuant to Fed. R. Civ. P. 55(a). Doc. No. 20. The Court directed the United States Marshal to serve McDougal a copy of the show cause order in person at the same address where he received service of the summons and complaint. *Id.* The United States Marshal filed a return indicating that McDougal was personally served with the order to show cause on April 23, 2024. Doc. No. 21. McDougal did not file a response to the

Order. On August 19, 2024, the Court referred the matter to the Clerk for entry of default, and McDougal's default was entered on the record. Doc. Nos. 22-23.

On October 10, 2024, the Court entered an order giving Scarver 30 days in which to file a motion for default judgment. Doc. No. 24. Scarver did so,[2] and the Court directed the Clerk to mail a copy of Scarver's motion to McDougal informing him that he had 14 days to respond to the motion. *See* Doc. Nos. 25-26. The mail from the Clerk to McDougal containing a copy of the motion for default judgment was returned as undeliverable. Doc. No. 27.

Given these facts, the undersigned finds that service of the summons and complaint in this case comported with the requirements of Ark. R. Civ. P. 4(f)(1), and the entry of default against McDougal was appropriate. Accordingly, the factual allegations set forth in Scarver's complaint cannot be refuted and default judgment is appropriate provided the alleged facts support "a legitimate cause of action." *See Murray v. Lene*, *supra*.

    2.    <u>Legal Standard – Failure-to-Protect Claim</u>

An inmate has a constitutional right to be free from attacks by others. *See Robinson v. Cavanaugh*, 20 F.3d 892 (8th Cir. 1994). To succeed on a failure-to-protect claim, Scarver must show that there was a substantial risk of serious harm to

---

[2] Scarver has since filed an affidavit stating that she had no information that McDougal was in the military as required by the Servicemembers Civil Relief Act (Doc. No. 29). *See* 50 U.S.C. § 3931.

him and that defendants were deliberately indifferent to that risk. *See Irving v. Dormire,* 519 F.3d 441, 447 (8th Cir. 2008). Specifically,

> This claim has an objective component, whether there was a substantial risk of serious harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk. *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). . . .

*Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020). The Eighth Circuit Court of Appeals has recognized that prison officials are entitled to qualified immunity when an inmate is attacked by surprise. *See Schoelch v. Mitchell*, 625 F.3d 1041, 1047-49 (8th Cir. 2010); *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002); *Curry v. Crist*, 226 F.3d at 979; *Jackson v. Everett*, 140 F.3d at 1151; *Prosser v. Ross*, 70 F.3d 1005, 1007 (8th Cir. 1995); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990).

3. <u>Scarver's Complaint Allegations</u>

Scarver alleges that she informed (non-defendant) Sergeant P. Mallott on May 19, 2023, that she may be harmed if assigned to 6 barracks. Doc. No. 10 at 4. She further alleges that on May 30, 2023, McDougal was assigned to 6 barracks and allowed two inmates access to an unassigned area which resulted in her being attacked and injured (with permanent scarring and an injured left ankle). *Id.* In her supplement, Scarver alleged, in relevant part:

> On 5-30-23 at 4:01 AM official McDougal key operated (6) barracks door fully aware. inmate P. Flood was assigned to (7) barracks instead of (6) barracks and yet still allowed inmates access to an unassigned area. This alone violates the rules and regulations of Arkansas Division of Corrections McPherson Unit. This is a maximum security prison. It is officials duty to know where an inmate is assigned at all times especially if there assigned to their area. Officials are provided every day with an inmate picture roster, showing what barracks, bed, and housing unit, job assignment and class status an inmate is assigned to in order to prevent an inmate from entering an unassigned area and etc.. McPherson officials can not protect from other inmates. Cameras footage dated for 5-19-23 from 3:00 AM-4:45 AM shows inmate Flood trying to enter (6) barracks while making threats to myself/inmates. It also shows either McDougal or Demotropulous keeping Flood from entering.

Doc. No. 15 at 2.[3]

    4.    <u>Hearing Testimony</u>

At the August 5, 2025 hearing, Scarver clarified her complaint allegations. She explained that she was attacked by two inmates, Flood and Reed, while she was sleeping on May 30, 2023. Scarver testified that she and Reed were assigned to 6 barracks, where the attack happened, but that Flood was assigned to 7 barracks and should not have been in 6 barracks that night. Scarver testified that she had no prior contact with Flood, apart from meeting her at some point, but said she and Reed had argued before. She stated that she told non-defendant Sergeant P. Malott that she would have problems with Reed if they were assigned to the same barracks, but she

---

[3] Scarver's complaint allegations are transcribed verbatim without any corrections for misspellings or mistakes.

was placed in the barracks with Reed on March 24, 2023, despite her fears. Scarver testified that she and Reed got into a fight the night before she was attacked, but no officers were made aware of it.

Regarding defendant McDougal, Scarver testified that McDougal should be held responsible for failing to protect her because he unlocked the door to 6 barracks and allowed Flood to enter an area she was not assigned to. Scarver further testified that other inmates told her Flood had been in her barracks for at least an hour before the attack, and McDougal had conducted a count to ensure inmates were in the right place. She also believed he should have been able to see the attack while it was happening, but he did not intervene; rather, the inmates who attacked her eventually stopped and went to the door and told him they were involved in an attack. However, she also testified that the attack was very quiet, and she could not scream because she was in shock.

Significantly, Scarver testified that she had never spoken to McDougal before the night of the attack. She admitted she did not notify McDougal of her concerns about Reed on the night of the attack and she did not tell McDougal (or anyone else) about the fight she had with Reed the night before. She was not aware of anyone else notifying McDougal of any risk to her from Reed or Flood before the attack. She also agreed that McDougal had no reason to believe that Reed or Flood posed a danger to her before they attacked her. Scarver's testimony simply fails to establish

that McDougal was aware of facts that would lead to an inference that Reed and Flood posed a substantial risk of serious harm to her, and that McDougal was deliberately indifferent to that risk.

Regarding her injuries, Scarver testified that Reed and Flood cut her lip and her back with a homemade shank. She received a shot for the pain and still has a scar on her lip. Scarver explained she still experiences flashbacks of the attack during which she feels like an elephant is on her chest and she cannot breathe; she also experiences fear that they will attack her again and has vivid dreams and wakes up screaming and in a cold sweat. She explained she has been given medication for chronic anxiety.

5. Conclusion

Although the Court is sympathetic to the injuries Scarver has suffered, default judgment is not appropriate in this case. Based on Scarver's complaint allegations, as clarified by her testimony, McDougal was not deliberately indifferent to a substantial risk of harm to her. He had no reason to know or infer that she faced any risk from inmates Flood or Reed. It was at most negligence for him to allow an unassigned inmate access to her barracks. *See Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (explaining that intentional conduct, rather than negligence, is required to sustain a § 1983 claim). Additionally, Scarver merely speculates that

McDougal could see the attack but failed to intervene. Accordingly, she is not entitled to a default judgment against him.

## VI. Conclusion

Based on these findings, it is hereby RECOMMENDED that:

(1) the entry of default against McDougal (Doc. No. 23) be VACATED;

(2) Scarver's motion for default judgment (Doc. No. 25) be DENIED; and

(3) this action be DISMISSED without prejudice.

SO RECOMMENDED this 18th day of August, 2025.

_____
UNITED STATES MAGISTRATE JUDGE